FILED BY _____ D.C.

05 SEP 30 PM 3: 11

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TENNESSEE/MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MARTHA LIGGINS, | |
| Plaintiff, | |
| vs. | No. 04-2861-Ma/P |
| RICH'S PRODUCTS CORP., | |
| Defendant. | |

ORDER DIRECTING PLAINTIFF TO COMPLY WITH THE RULES
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
AND
ORDER GRANTING MOTION FOR EXTENSION OF DISCOVERY DEADLINES

Plaintiff Martha Liggins filed an employment discrimination complaint under Title VII, 42 U.S.C. § 2000e-5, alleging that she was sexually harassed by her supervisor at Rich's Products Corp. ("Rich's"). On February 22, 2005, Rich's filed a motion to dismiss, a supporting memorandum, and the affidavit of General manager Jane Venson with attached exhibits. Defendant Rich's relies on matters outside the pleadings. Therefore, the motion to dismiss must be treated as one for summary judgment. See Fed. R. Civ. P. 12(b). Plaintiff did not respond to the motion to dismiss. On August 23, 2005, the Court directed Liggins to show cause why the motion to dismiss should not be granted.

On September 8, 2005, Liggins filed an irregular document with exhibits which the Court construes as her response to the motion to dismiss. On September 14, 2005, Rich's filed a renewed motion to

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 9·30·05

/7

dismiss or in the alternative motion for extension of discovery and dispositive motion deadlines. The renewed motion states "[a]s of the date of this filing, to Defendant's knowledge, Plaintiff has not responded to the Order to Show Cause." Plaintiff's "response" does not contain a certificate of service as required by Fed. R. Civ. P. 5(d) and Local Rule 83.7(b). Plaintiff is directed to serve a copy of her response on counsel for the defendant.

Fed. R. Civ. P. 10 requires that documents contain numbered paragraphs. The paragraphs must be sequentially numbered in a manner that allows the defendant to respond to the allegations of each paragraph. Plaintiff is proceeding *pro se* and must familiarize herself with the Federal Rules of Civil Procedure and the Local Rules of this Court so that her pleadings comply with those rules.

The plaintiff shall serve a copy of every further document filed in this cause on the attorney for the defendant and shall make a certificate of service on every document filed. Any further documents must contain a certification at the end reading:

> I hereby certify that a true and exact copy of the foregoing has been forwarded by first class, postage prepaid mail, to Tim K. Garrett, 315 Deaderick St. Suite 2700, Nashville, TN 37238, on this ____ day of _____, 2005.
>
> _____
> Martha Liggins

The Clerk is ORDERED not to accept for filing any further documents submitted by this plaintiff that are not accompanied by a certificate of service or certificate of consultation as required.

The following undisputed facts appear in the record.

1. Rich's is a privately held corporation that manufactures a variety of frozen food products, including breads, rolls, cakes, muffins, desserts, and nondairy toppings and icings. (Affidavit of Jane Venson, hereinafter "Venson Aff." at para. 2). Plaintiff Liggins is employed as an hourly worker at Rich's facility located in Arlington, Tennessee. (Venson Aff. At para. 4). Rich acquired the Arlington plant from Morningstar Foods on July 31, 2003. Since that time, Rich's has been operating the Arlington plant with essentially the same personnel formerly employed by Morningstar Foods. (Venson Aff. At para. 3). All hourly production and maintenance employees at Rich's Arlington facility are represented by the United Food and Commercial Workers Union, Local 515 ("Union"). The wages, hours, and working conditions of all employees are governed by a collective bargaining agreement between Rich's and the Union ("CBA'). (Id.).

2. Before Rich's acquired the Arlington facility from Morningstar Foods, the plant produced two distinct product lines: store brand bowl whip topping ("PWT") and coffee creamers, including International Delight ("ID"). (Venson Aff. At para. 5). Plaintiff worked in the ID department. (Id.). Before selling the Arlington plant to Defendant, Morningstar determined that ID production at the plant would be phased out. Based upon the CBA, employees who had the least seniority were placed on lay off status, while those employees with greater seniority, including Plaintiff, continued operating the line until the last day of ID production. (Id.).

3. While the ID production line was being phased out, PWT production was increasing. (Venson Aff. At para. 6). Therefore, when work was available on the PWT line, the remaining ID employees were given the first option to work that line. Again, such assignments were based upon the CBA. Eventually, Rich's was able to call back those employees who had been laid off. As a result, all associates who formerly worked in the ID department were being trained for work in different areas of the plant. (Id.).

4. Due to the need to train the employees on a new production line, position assignments for all of the affected employees rotated on a week-to-week basis, and such training assignments were made in accordance with the CBA. (Id.). Other factors such as vacation schedules and unpredicted absences affected daily position assignments. (Id.). On November 3, 2003, newly created PWT positions were posted for bidding, thereby allowing all employees whose previous jobs had been eliminated to continue their employment with Defendant on the PWT line, including Plaintiff. (Venson Aff. At para. 7).

5. On September 15 and 16, 2003, Plaintiff filed a grievance with Rich's complaining that her supervisor was "harassing" her by trying to make her job hard, by putting her on certain jobs that no one wanted to do (for example by having her work on the bander for 3 weeks), and by trying to make her mad. (Venson Aff. At para. 8 & Exh. 1). Plaintiff noted her seniority of 13 years at the plant. (Exh. 1)

6. A few days later, on September 19, 2003, Rich's received notice from the Equal Employment Opportunity Commission that Plaintiff had filed a charge of discrimination, alleging sexual harassment. (Venson Aff. At para 9). The charge, however, provided no particulars about the factual basis for Plaintiff's claim. Thus, the only factual basis Rich's had for the sexual harassment charge related to the grievance that Plaintiff had filed under the CBA complaining about her supervisor's assignments.

7. In response to the grievance and the charge, Rich's conducted an investigation. (Venson aff. At para. 9). Rich's investigation yielded no credible evidence of sexual harassment but, at most, confirmed that Plaintiff was complaining about Plaintiff's training and job assignments, which were being made in accordance with the CBA. (Venson aff. At paras. 9-10). In accordance with the grievance procedure provided in the CBA, the Union apparently agreed that Rich's had not violated the CBA and chose not to pursue Plaintiff's grievance to arbitration. (Venson aff. At para. 9).

The grounds for defendant's motion for summary judgment are:

A. plaintiff fails to satisfy the pleading requirements outlined in Rule 8 of the Federal Rules of Civil Procedure, and

B. plaintiff's sexual harassment claim is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Under Rule 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," id. at 323, the nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial."

4

Fed. R. Civ. P. 56(e). If the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986).

Pursuant to Rule 56(e), a "party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citations omitted). A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Id. In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

This Court must determine whether the defendant has established the absence of a genuine issue of material fact as to plaintiff's claim of sexual harassment. The portion of plaintiff's complaint which relates "[t]he circumstances under which defendant discriminated against plaintiff were as follows" states "[s]exually harassed." Plaintiff attached a copy of the charge of discrimination, dated September 11, 2003, as an exhibit to her complaint which states, in its totality:

5

> I am an Operator on the 1st Shift. I earn $13.90 per hour for full time work. I was hired on September 10, 1990. The plant used to be Morning Star. It is now Rich's Foods since about August 2003. Louis Greer is my supervisor. He is the person who is sexually harassing me. Jane Vinson, Human resources, Arlington, TN and Headquarters personnel at Buffalo, New York, have knowledge of the actions of Louis Greer. I believe I am being discriminated against because of my sex, female, and sexually harassed in violation of Title VII of the Civil Rights Act of 1964, as amended.

Plaintiff's grievance filed under the CBA with Rich's on September 15, 2003, states:

> I am filing discrimination charger [sic] on Louis Greer. He is harassing me on my job. He is trying to make my job hard. Put me on the jobs no one don't want to do. I being [sic] working here for 13 years. He is doing this cause I file sexual harassment on him early. He is trying to make me mad. I working on bander for 3 weeks. This is my 3rd week doing the bander. Everyone else doing they training do jobs I can do.

(Exhibit 1, Venson affidavit).

Plaintiff's grievance states that Louis Greer is "trying to make her job hard because she "file[d] sexual harrassment" charges earlier. Plaintiff's charge of sexual harassment preceded the work grievance by four days. Plaintiff's response to the show cause order contains allegations of specific behavior by her supervisor, including improper touching, comments, and requests. Those allegations cure the deficiencies noted by the defendant in the motion to dismiss. Defendant is now on notice of "what the harasser did to sexually harass" the plaintiff. Fleenor v. Hewett Soap Company, 81 F.3d 48, 50 (6th Cir. 1996).

There are two types of sexual harassment, quid pro quo harassment and harassment that creates an offensive or hostile work

6

environment. Kauffman v. Allied Signal, Inc., 970 F.2d 178, 182 (6th Cir. 1992). In general, those categories differ by virtue of the presence, or absence, of a tangible adverse employment action resulting from the plaintiff's refusal to acquiesce to the sexual demands that were made on her.[1]

The elements of a Title VII hostile work environment claim are as follows:

> 1) the employee was a member of a protected class; 2) the employee was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a physical nature; 3) the harassment complained of was based upon sex; 4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the [psychological] well-being of the plaintiff; and 5) the existence of respondeat superior liability.

Kauffman, 970 F.2d at 183 (quoting Rabidue v. Osceola Refining Co., 805 F.2d 611, 619-20 (6th Cir. 1986)); cf. Moore v. Kuka Welding Sys., 171 F.3d 1073, 1078-79 (6th Cir. 1999) (elements of a race-based hostile work environment claim). A hostile environment claim can be predicated on an isolated, but extremely severe, incident.

---

[1] As the Supreme Court explained:

> Cases based on threats which are carried out are referred to often as quid pro quo cases, as distinct from bothersome attentions or sexual remarks that are sufficiently severe or pervasive to create a hostile work environment. The terms quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility.

Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751 (1998).

See, e.g., Hickman v. Laskodi, 45 Fed. Appx. 451, 454-55 (6th Cir. Aug. 30, 2002).

Manager Venson investigated plaintiff's grievance "about her training and job assignments" in accordance with Rich's obligations under the CBA. Although Ms. Venson's investigation "yielded no credible evidence of sexual harassment," the Court's function at this stage is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Plaintiff's complaints about job training and assignment, issues addressed by the CBA, appear to be easily distinguishable and independent from her allegations about specific conduct by her supervisor which predated her CBA grievance. The purely factual questions about the supervisor's conduct and motives do not require this Court to interpret the CBA. Accordingly, the defendants have failed to carry their burden to demonstrate the absence of genuine issues of material fact on plaintiff's claims of sexual harassment. The motion for summary judgment is DENIED.

Defendant's motion for extension of discovery and dispositive motion deadlines is GRANTED. A new scheduling order will be entered.

IT IS SO ORDERED this **30th** day of September, 2005.

*/s/ Samuel H. Mays, Jr.*

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 19 in case 2:04-CV-02861 was distributed by fax, mail, or direct printing on September 30, 2005 to the parties listed.

---

Tim K. Garrett
BASS BERRY & SIMS PLC
315 Deaderick Street
Ste. 2700
Nashville, TN 37238--000

Martha Liggins
1713 Bramblewood Street
Brownsville, TN 38012

Honorable Samuel Mays
US DISTRICT COURT